IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

RODNEY MCDANIEL                                                                                         PLAINTIFF

V.                                              CASE NO. 05-CV-1091

NATIONAL-OIL WELL, INC.                                                                          DEFENDANT

LIBERTY MUTUAL INSURANCE COMPANY                                                INTERVENOR


## MEMORANDUM OPINION

Before the Court is Defendant National-Oil Well, Inc.'s Motion (1) To Strike Testimony of Wayne Hibbs, (2) To Exclude the Testimony of Plaintiff's Experts, and (3) For Summary Judgment.  (Doc. 40-1).  Plaintiff Rodney McDaniel has responded.  (Doc. 49-1).  The Court heard arguments on these motions at a hearing on March 10, 2007.  The Court finds the matter ripe for consideration.

### I. BACKGROUND

In 2003, Plaintiff Rodney McDaniel was injured while working on a mobile workover rig manufactured in 1981 by Cardwell International, a predecessor of Defendant National-Oil Well, Inc.  McDaniel was employed by Reliance Well Service as a "derrick man" at the time of the accident.   The rig was being operated by another Reliance Well Service employee, who allowed the traveling block on the rig to strike the crown.  Proper operation of the rig requires stopping the traveling block below the crown.  The traveling block's collision with the crown caused the drill line to snap and strike McDaniel who was located in the rod basket approximately eighty feet in the air.  The drill line struck McDaniel's left arm causing him to permanently lose the use of this arm.

This case arises from McDaniel's complaint that National-Oil Well was negligent in not offering a Crown-o-Matic safety device[1] to Reliance Well Service when the rig was sold and that National-Oil Well is strictly liable for selling a rig in a defective condition, which renders it unreasonably dangerous for intended use.

McDaniel has designated two experts to testify at trial on his behalf, Wayne Hibbs and Dr. Ken Blundell. National Oil-Well moves to strike Hibbs's testimony to the extent it involves opinions or bases for opinions not stated in his Rule 26(a)(2)(B) report. National Oil-Well also moves to exclude the testimony of Wayne Hibbs and Dr. Blundell, arguing that their testimony does not comply with *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993). Finally, National Oil-Well moves for summary judgment.

## II. DISCUSSION

*A. Defendant's Motion to Strike Testimony of Wayne Hibbs*

Defendant argues that the Court should strike the testimony of Wayne Hibbs because his expert witness report did not comply with Federal Rule of Civil Procedure 26(a)(2)(B), which requires an expert witness to prepare a report containing a "complete statement of all opinions to be expressed and the basis and reasons therefor ...." Rule 26(a)(2)(B) imposes a duty to disclose "information regarding expert testimony sufficiently in advance of trial that opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." Fed. R. Civ. P. 26, advisory committee notes (1993 Amendments).

---

[1] The Crown-o-Matic is a piece of safety equipment that was developed to prevent the traveling block from striking the crown of a rig.

Here, Hibbs did not include all of his relevant opinions in his expert witness report, but he did discuss these opinions during his deposition. Thus, Defendant was put on notice that Hibbs might rely on these opinions during his trial testimony. Moreover, the Court has given Defendant permission to depose Wayne Hibbs a second time before trial if Defendant so wishes, allowing the Defendant to have another opportunity to fully and fairly examine Hibbs regarding his opinions. "A harmless violation of Rule 26 does not mandate exclusion of the evidence." *Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879 (8th Cir. 2006) (holding that the trial court committed no error in allowing the testimony of a doctor who failed to disclose his reliance on an x-ray in his expert witness report because the doctor discussed his reliance on the x-rays during his deposition and the plaintiff was on notice of such reliance). Thus, the Court will not strike Hibbs's testimony for failure to comply with Rule 26(a)(2)(B).

  *B.  Defendant's Motion to Exclude the Testimony of Plaintiff's Experts*

Defendant asserts that neither Wayne Hibbs nor Dr. Ken Blundell is qualified to render expert testimony on the issues on which they are tendered. The starting point for analyzing expert testimony is Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), the Court is to perform a "gatekeeping" function and insure that proffered expert testimony is both relevant and reliable. *See Penney v. Praxair, Inc.*, 116 F.3d 330, 333 (8th Cir. 1997). When assessing the reliability of expert testimony, *Daubert* suggests that the Court

consider (1) whether the concept has been tested, (2) whether the concept has been subject to peer review, (3) what the known rate of error is, and (4) whether the concept is generally accepted by the community. *Pestel v. Vermeer Mfg. Co.*, 64 F.3d 382, 384 (8th Cir. 1995). "Cases decided after *Daubert* provide additional factors, including 'whether the expertise was developed for litigation or naturally flowed from the expert's research.'" *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006). However, the *Daubert* factors should only be relied upon to the extent that they are relevant, and the district court must customize its inquiry to fit the facts of each particular case. *See Daubert*, 509 U.S. at 594, 113 S. Ct. 2786; *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1083 (8th Cir. 1999) (citing *Pestel*, 64 F.3d at 384)). "[N]ot every guidepost outlined in *Daubert* will necessarily apply to expert testimony based on engineering principles and practical experience ...." *Jaurequi*, 173 F.3d at 1083 (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997)).

   1. <u>Wayne Hibbs</u>

  Defendant asserts that Wayne Hibbs is not qualified to testify as an expert in the land-based workover rig industry and that his proposed testimony is unreliable. Plaintiff contends that Hibbs is qualified to testify as an expert based upon his education and experience. Hibbs does not have a college degree and is not a licensed or registered professional engineer. He has spent fifty-seven years in the oil industry and has been employed as an engineer for oil companies since the 1950s. Hibbs is a member of the Society of Petroleum Engineers. Hibbs has operated a workover rig on one occasion.

  Hibbs's experience in the oil industry is primarily in drilling, and he is in the business of buying and selling used oilfield equipment. Hibbs has never bought or sold a workover rig

similar to the rig involved in the present case.  Hibbs has never designed or manufactured a workover rig or a Crown-o-Matic.  He has never operated a workover rig when a Crown-o-Matic has activated and has not done or read any studies regarding the Crown-o-Matic's effectiveness or reliability when used on workover rigs.  Hibbs admitted that, at the time of his deposition, he had spent a total of only thirty or forty minutes preparing for this case.

     It is Hibbs's opinion that workover rigs should come equipped with a Crown-o-Matic even if the purchaser does not want one and that a Crown-o-Matic would have prevented Plaintiff's injuries in this case.  These conclusions are not supported by reliable information.  Hibbs's theories have not been tested by him or by anyone else to his knowledge.  Hibbs has not published any work that discusses his theories.  Hibbs does not know the actual or potential rate of error for a Crown-o-Matic on a workover rig.  There is no evidence that Hibbs's theories have been generally accepted by the land-based workover industry in the United States.  In fact, there is testimony that the use of Crown-o-Matics on land-based workover rigs is not the common practice of the land-based workover industry.  Hibbs does not have the qualifications to testify as an expert witnesses and his opinions and conclusions regarding whether workover rigs should come equipped with a Crown-o-Matic and whether the use of a Crown-o-Matic would have prevented Plaintiff's injuries are not reliable.  Thus, Hibbs's proposed testimony regarding any opinions rendered by him as an expert will be excluded because Hibbs does not qualify as an expert witness.

     While Hibbs does not meet the qualifications to testify as an expert witness, he does have much experience in the oil industry.  Hibbs will be allowed to testify as a lay witness regarding facts of which he has knowledge based on his experience in the oil industry with Crown-o-Matics

and workover rigs, including but not limited to facts regarding the operation of Crown-o-Matics and the availability of Crown-o-Matics for workover rigs in 1981.

### 2. Dr. Ken Blundell

Defendant asserts that Dr. Ken Blundell's proposed testimony should be excluded because his testimony is unreliable and his qualifications as an expert are lacking. Dr. Blundell has a B.S. in mechanical engineering, an M.S. in production engineering, and a Ph.D. in mechanical engineering. He has many years of industrial experience, has written numerous publications on engineering, has been a professor of engineering, and has received honors in the engineering field. Dr. Blundell's specialty is product design and safety.

The engineering principles of product design and methods used by Dr. Blundell have been tested and are acceptable. Dr. Blundell's conclusion that the workover rig in this case contained a manufacturing defect that rendered the product unreasonably dangerous as of 1981 is supported by reliable engineering principles and his experience in product design and safety. In forming his opinion, Dr. Blundell relied on pictures of the workover rig in question, the schematics of the workover rig at the time of manufacture, the depositions of Max Story, Rodney McDaniel, and other crew members. Dr. Blundell has evaluated relevant facts and circumstances and has applied accepted engineering principles to those facts based upon his knowledge, education, skill and experience. Dr. Blundell's method of evaluation has certainly been tested in several fields of study, including engineering and law, and has been widely used in products liability suits. This Court finds that Dr. Blundell is qualified as an expert and that his proposed testimony is reliable and relevant. Thus, Dr. Blundell's proposed testimony will not be excluded.

    *C. Defendant's Motion for Summary Judgment*

The standard of review for summary judgment is well established.  Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed. 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed. 202 (1986).  In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party.  *Nitsche v. CEO of Osage Valley Elec. Co-Op.*, 446 F.3d 841 (8th Cir. 2006).  The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).  A party opposing a motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial, by affidavits or otherwise as provided in Rule 56, and may not rest upon the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Dancy*, 127 F.3d 649, 653 (8th Cir. 1997).

    Defendant argues that, if the testimony from Plaintiff's experts is excluded, Plaintiff cannot meet his burden of proving negligence, strict liability, or causation.  However, this Court has only excluded opinion testimony from one of Plaintiff's experts.  A supplier of a product is subject to liability in damages for harm to a person if the product was supplied by the supplier in a defective condition that rendered it unreasonably dangerous and the defective condition was a proximate cause of the harm.  *See* Ark. Code Ann. § 4-86-102(a) (Repl. 2001).  In this case,

Plaintiff must show that National Oil-Well supplied the workover rig to Reliance Well Service in a defective condition that rendered the workover rig unreasonably dangerous and that the defective condition was a proximate cause of the harm.

Negligence requires proof that an ordinarily prudent person in the same situation will foresee an appreciable risk of harm to others, causing him or her to act in a more careful manner. *Dancy*, 127 F.3d at 654.  In this case, Plaintiff must show that the risk of injury was foreseeable and that reasonably prudent manufacturers of workover rigs in 1981 would not have sold a workover rig without a Crown-o-Matic.  The Court is satisfied that the Plaintiff, through its witnesses and expert, can demonstrate that genuine issues of material facts do exist regarding the strict liability claim and the negligence claim.  Thus, the Court cannot say that National Oil-Well is entitled to judgment as a matter of law.

### III.  CONCLUSION

For reasons discussed herein and above, the Court finds that (1) Defendant's Motion to Strike Testimony of Wayne Hibbs for noncompliance with Rule 26(a)(2)(B) should be **DENIED**, (2) Defendant's Motion to Exclude Testimony of Wayne Hibbs should be **GRANTED** to the extent that any opinions offered by Wayne Hibbs as an expert will be excluded, (3) Defendant's Motion to Exclude Testimony of Dr. Ken Blundell should be **DENIED**, and (4) Defendant's Motion for Summary Judgment should be **DENIED**.  An order of even date, consistent with this opinion, shall issue.

**IT IS SO ORDERED**, this 12th day of April, 2007.

/s/ Harry F. Barnes
Hon. Harry F. Barnes
United States District Judge